1

2

3        UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF WASHINGTON
4                AT TACOMA

5   MICHAEL J. KIRST,

6                     Plaintiff,                CASE NO. C14-5014 BHS

7   v.                                          ORDER GRANTING
                                               DEFENDANT'S MOTION FOR
8   GRAYS HARBOR COMMUNITY                      SUMMARY JUDGMENT
    HOSPITAL, a Washington non-profit
9   corporation,

10                    Defendant.

11

12        This matter comes before the Court on Defendant Grays Harbor Community

13   Hospital's ("Hospital") motion for partial summary judgment (Dkt. 13).  The Court has

14   considered the pleadings filed in support of and in opposition to the motion and the

15   remainder of the file and hereby grants the motion for the reasons stated herein.

16                          **I. PROCEDURAL HISTORY**

17        On December 2, 2013, Plaintiff Michael Kirst ("Kirst") filed a complaint against

18   the Hospital in Grays Harbor County Superior Court.  Dkt. 1, Ex. 1.  Kirst alleges that (1)

19   he was discriminated against and wrongfully terminated because of his disability and the

20   Hospital failed to provide reasonable accommodations for his disability, (2) he

21   discriminated against based on his age, and (3) he was wrongfully discharged in violation

22   of public policy.  *Id.*

ORDER - 1

On January 7, 2014, the Hospital removed the matter to this Court.  Dkt. 1.

On November 20, 2014, the Hospital filed a motion for partial summary judgment on Kirst's disability claims and discrimination claims.  Dkt. 13.  On December 15, 2014, Kirst responded.  Dkt. 19.  On December 19, 2014, the Hospital replied.  Dkt. 20.

## II. FACTUAL BACKGROUND

From January 2005 until December 2011, Kirst worked for the Hospital as a nuclear medicine technologist.  Dkt. 17, Declaration of Edward Taylor, Ex. A, Deposition of Michael Kirst ("Kirst Dep.") 100:2–6.  His duties included performing nuclear medicine procedures using radioactive isotopes, operating related equipment, and providing associated patient care.  Kirst Dep. 101:17–20; Kirst Dep., Ex. 19.

Kirst states that throughout the course of his entire employment at the Hospital he routinely pulled and reviewed films and medical reports for patients with whom Kirst had no involvement at all in the provision of care.  Kirst Dep. 21:1–2, 68:2–7, 89:4–7, 134:2–136:12, 142:5–8, 148:21–149:19; Kirst Dep., Exs. 27, 28.  Some of the patients in question were not only patients of the Hospital, but also of Grays Harbor Imaging, a separate, off-site entity that provided the Hospital's records-storage services and is partially owned by the Hospital.  Dkt. 14, Declaration of Julie Feller ("Feller Dec.") ¶ 3.  Kirst admits that these patients had no idea he was reviewing their protected health information.  Kirst Dep. 146:3–6.  Kirst claims to have done this for his own edification.  Kirst Dep. 21:5, 88:1–5, 89:5–7.  Kirst admits to doing this "at least" a thousand times before he was caught; he even told the Hospital during its investigation that "I did it a thousand times more than what you found."  Kirst Dep. 148:23–149:18.  Kirst also

1  admits that he did this entirely on his own, without any supervision, solely on his own

2  authority.  Kirst Dep. 92:25–93:7.

3      Kirst stated that he was unaware that it was a violation of the Health Insurance

4  Portability and Accountability Act ("HIPAA") to access protected health information in

5  this fashion.  Kirst Dep. 75:6–12, 79:25–80:3.  Kirst, however, attended multiple HIPAA

6  training sessions during his employment, including a test on HIPAA procedures that Kirst

7  took just days before the Hospital discovered Kirst's actions.  Kirst Dep. 84:6–85:21;

8  Kirst Dep., Ex. 15.  Moreover, on October 22, 2010, the Hospital mailed Kirst a copy of

9  its confidentiality policy, which provides that discipline, up to and including discharge,

10  will be imposed for violations.  Feller Dec. ¶ 4; Kirst Dep., Ex. 18.

11      Kirst's misconduct was discovered on the morning of October 19, 2010, by Eric

12  Timmons ("Timmons"), another nuclear medicine technologist at the Hospital and one of

13  Kirst's co-workers.  Dkt. 15, Declaration of Eric Timmons ¶ 2.  Timmons reported the

14  information to his manager, and, eventually the Hospital's Risk Management department

15  initiated an investigation.  *Id.* ¶¶ 4–5.  During the investigation, Jonathan Wright, the

16  administrator of the PACS system in which the records are stored, discovered numerous

17  instances in the fall of 2011 where access logs showed Kirst accessing films and reports

18  of patients with whom Kirst had no medical involvement.  Dkt. 16, Declaration of

19  Jonathan Wright ¶¶ 2–3; *see also* Kirst Dep., Exs. 27, 28.

20      After the investigation, Blake Neeley ("Neeley"), the Director of Imaging

21  Services, and Julie Feller ("Feller"), the Hospital's Human Resources Executive Director,

22  interviewed Kirst.  Kirst Dep. 133:4–16; Feller Dec. ¶ 6.  Kirst's union representative,

John Warring, was also present.  Kirst Dep. 133:8–12.  Neeley and Feller told Kirst that the Hospital had audited the PACS system for the past three weeks and discovered that Kirst had viewed the records of patients that he had no reason to review; they asked him to explain why he had done this.  Kirst Dep. 20:12–17, 134:13–18; Feller Dec. ¶ 7.  Kirst admitted that he had looked at these films and records and stated that he had done so for his own "education."  Kirst Dep. 21:1–5, 134:19–23; Feller Dec. ¶ 8.

The Hospital decided to punish Kirst by giving him a thirty-day unpaid suspension, on the condition that Kirst sign a Last Chance Agreement committing, under penalty of immediate discharge, not to "engage in conduct that constitutes a violation of HIPAA or the Hospital's policies and directives regarding HIPAA by accessing patient records without a permitted purpose under HIPAA (e.g., a need to access in order for [Kirst] to perform his job duties)."  Feller Dec. ¶ 11; Kirst Dep., Ex. 11.  The Hospital also decided that if Kirst was unwilling to agree to the commitments in the Last Chance Agreement, he would be fired.  Feller Dec. ¶ 12.  Kirst chose not to sign the Last Chance Agreement.  Kirst Dep. 74:7–76:7, 137:2–24.  As a result, the Hospital terminated Kirst's employment effective December 15, 2011.  Feller Dec. ¶ 13; Kirst Dep., Ex. 26.

The Hospital contends that it has fired numerous other employees in recent years for HIPAA and Confidentiality Policy violations.  Feller Dec. ¶ 14.  According to the Hospital, these other employees who were fired engaged in conduct that was "far less egregious than that of Kirst . . . ."  *Id.* ¶ 15.  Specifically, the Hospital fired Terry Cunningham after she was overheard speaking with one patient about the medical condition of another.  *Id.*  The Hospital fired Ruth Dixon after learning that she had

1    accessed three different patients' emergency records when she had no business reason to

2    do so. *Id.* ¶ 16.  The Hospital fired Jennifer Glerup after an audit revealed that she had

3    accessed a particular patient's record five times without a business reason to do so. *Id.*

4    ¶ 17.  The Hospital fired Janice Matthyssens after receiving a complaint that she had

5    given out confidential test results over the telephone.  *Id.* ¶ 18.  The Hospital fired

6    Deborah Pena after it received a complaint that she had accessed patient admissions

7    records and shared some patient information with others.  *Id.* ¶ 19.  Finally, the Hospital

8    fired Megan Wilbur after learning that she had posted a picture to her Facebook page

9    containing the names of three Hospital patients and details about their medications.  *Id.*

10   ¶ 20.  The Hospital contends that all of these other employees were substantially younger

11   than Kirst.  *Id.* ¶ 21.

12                              **III. DISCUSSION**

13   **A.      Summary Judgment Standard**

14           Summary judgment is proper only if the pleadings, the discovery and disclosure

15   materials on file, and any affidavits show that there is no genuine issue as to any material

16   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

17   The moving party is entitled to judgment as a matter of law when the nonmoving party

18   fails to make a sufficient showing on an essential element of a claim in the case on which

19   the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

20   323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

21   could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

22   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).   Conversely, a genuine dispute over a material fact exists

if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

jury to resolve the differing versions of the truth.   *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The

Court must consider the substantive evidentiary burden that the nonmoving party must

meet at trial—e.g., a preponderance of the evidence in most civil cases.   *Anderson*, 477

U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.   The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party.   The

nonmoving party may not merely state that it will discredit the moving party's evidence

at trial, in the hopes that evidence can be developed at trial to support the claim.   *T.W.*

*Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).   Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be

presumed.   *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.      Age Discrimination, Disability Discrimination, Retaliation**

It is undisputed that the *McDonnell Douglas* burden-shifting framework applies to

Kirst's age- and disability-based disparate treatment claims and to his retaliation claim.

Under the *McDonnell Douglas* framework, if the employee produces evidence sufficient

to make a prima facie case of discrimination, the burden shifts to the employer to provide

1  a legitimate, non-discriminatory reason for the adverse action.  *Hill v. BCTI Income*

2  *Fund-1*, 144 Wn.2d 172, 181–82 (2001).  If the employer proffers a legitimate, non-

3  discriminatory reason, the burden shifts back to the employee to produce evidence that

4  the employer's reason is pretextual.  *Id.* at 182.  If the employee cannot show pretext, the

5  employer is entitled to judgment as a matter of law.  *Id.*

6       In his response, Kirst fails to meet his burdens under the *McDonnell Douglas*

7  framework.  For example, Kirst argues that he "has presented a prima facie case for

8  retaliation thus precluding summary judgment."  Dkt. 19 at 13.  However, presenting a

9  prima facie case is only Kirst's *initial* burden.  When, as here, the employer presents a

10  legitimate non-discriminatory reason for its adverse action, Kirst has the final burden of

11  showing that the employer's reason is merely pretext.  Kirst failed to even address this

12  final burden.  *See* Dkt. 19 at 8–15.  This failure is fatal to his discrimination and

13  retaliation claims.

14       With regard to the Hospital's burden, it asserts that it terminated Kirst for two

15  reasons.  First, the Hospital discovered that Kirst had committed thousands of violations

16  of HIPAA and the Hospital's Confidentiality of Information Policy.  The Court finds that

17  this alone is a legitimate reason to terminate an employee, and the Hospital has submitted

18  evidence of numerous terminations for far fewer and less egregious violations of these

19  rules.  The Hospital, however, chose to offer Kirst an alternative form of punishment

20  including a suspension and a Last Chance Agreement.

21       Second, when Kirst declined to accept the alternative punishment, the Hospital

22  terminated his employment.  The Court finds that Kirst's failure to accept the alternative

1  form of punishment is also a legitimate non-discriminatory reason to terminate Kirst.

2  Having been put on notice that an employee had violated patients' privacy rights

3  thousands of times, the Hospital had a legitimate interest in ensuring that Kirst would not

4  commit such violations in the future.  Therefore, the Court concludes that the Hospital

5  has met its burden on this issue.

6       With regard to pretext, Kirst must show that the Hospital's reason is pretextual or

7  that discrimination was nonetheless a substantial motivating factor in its decision to

8  terminate him.  *See Scrivener v. Clark College*, 181 Wn.2d 439, 441–42 (2014).  Kirst

9  must identify specific evidence in the record showing that the Hospital's reason (1) had

10  no basis in fact, (2) was not really a motivating factor for its decision, (3) was not

11  temporally connected to his termination, or (4) was not a motivating factor in

12  employment decisions for other employees in the same circumstances.  *Id.* at 447–48.

13       On this issue, Kirst provides two arguments for why the Hospital's reason is

14  pretextual.  First, Kirst argues that the Hospital "admits that it did not have sufficient just

15  cause to terminate Kirst based on the alleged HIPAA violations."  Dkt. 19 at 12.  Courts,

16  however, "only require that an employer honestly believed its reason for its actions, even

17  if its reason is foolish or trivial or even baseless."  *Villiarimo v. Aloha Island Air, Inc.*,

18  281 F.3d 1054, 1063 (9th Cir. 2002) (internal quotations omitted).  The evidence shows

19  that the Hospital reasonably believed that Kirst violated HIPAA or, at the very least, the

20  Hospital's policies implementing HIPAA.  Kirst Dep., Ex. 26 (termination letter).  While

21  Kirst's union agreement may have provided additional employee rights that the Hospital

22  was required to meet before termination under the collective bargaining agreement, such

1    as a finding of "just cause," the Hospital's reason was far from "baseless," which is the

2    standard under federal and state discrimination laws.  In other words, even if an arbitrator

3    later found that the Hospital did not have just cause to terminate Kirst, this possibility

4    does not show that the Hospital's legitimate non-discriminatory reason for terminating

5    Kirst was pretextual.  Any employer that discovers that an employee could have

6    committed thousands of violations of federal law as well as the employer's policies has a

7    legitimate non-discriminatory reason to act adversely to the employee.  Thus, Kirst's

8    unsupported argument is not in accord with controlling discrimination laws.

9         Second, Kirst argues that the Hospital chose to treat Kirst differently than other

10   similarly disciplined employees.  Kirst, however, was treated more *favorably* than the

11   other employees because he was offered an alternative to termination.  Dkt. 19 at 15.  For

12   example, the Hospital fired an employee for accessing a patient's records five times with

13   no business reason to do so.  Feller Dec. ¶ 17.  The Court is unable to conclude that

14   treating an employee more favorable is evidence of pretext for discrimination.  Therefore,

15   the Court concludes that Kirst has failed to meet his burden on this issue and grants the

16   Hospital's motion for summary judgment on Kirst's discrimination and retaliation claims.

17   **C.     Failure to Accommodate**

18         Under both the ADA and Washington law, an employer has an affirmative duty to

19   provide reasonable accommodations to individuals with disabilities.  42 U.S.C.

20   § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a); RCW 49.60.180(2).  For Kirst to establish a

21   prima facie case, he must demonstrate that: (1) he is disabled within the meaning of the

22   ADA; (2) he is a qualified individual able to perform the essential functions of the job

1  with reasonable accommodation; and (3) he suffered an adverse employment action

2  because of his disability.  *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003).

3         In this case, Kirst fails to show that he suffered an adverse employment action

4  because of his alleged disability.  All of the evidence shows that Kirst was terminated for

5  privacy violations.  In fact, Kirst has failed to direct the Court to any evidence in the

6  record showing that he was terminated because his back and neck problems were the

7  reason for his termination.  This is likely due to the fact that no such evidence exists.

8  While it is true that the facts show that the Hospital was working with Kirst to alleviate

9  the lifting of patients in a particular room of the Hospital, there is no evidence that

10  correlates this accommodation with the reason for his termination.  Therefore, the Court

11  grants the Hospital's motion for summary judgment on Kirst's failure to accommodate

12  claim.

13

                                    **IV. ORDER**

14

       Therefore, it is hereby **ORDERED** that the Hospital's motion for partial summary

15  judgment (Dkt. 13) is **GRANTED**.

16

       Dated this 27th day of January, 2015.

17

18

19

20  BENJAMIN H. SETTLE
    United States District Judge

21

22